**Jules SAMANN, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 8640.**

United States Court of Appeals
Fourth Circuit.

Argued Sept. 28, 1962.

Decided Jan. 16, 1963.

Karl Riemer, Washington, D. C. (Pehle, Mann, Riemer & Luxford, Washington, D. C., on brief), for petitioner.

John B. Jones, Jr., Attorney, Department of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks, Harry Baum, and Harold C. Wilkenfeld, Attorneys, Department of Justice, on brief), for respondent.

Before BRYAN and BELL, Circuit Judges, and JOHN PAUL, District Judge.

ALBERT V. BRYAN, Circuit Judge.

The Income Tax Convention [1] of 1951 between the United States and Switzerland exempts from Federal taxation royalties derived from sources in the United States by a Swiss resident "not having a permanent establishment" in this country. By Treasury regulation [2] the condition of no permanent establishment written into the exemption is declared to require that there be no such establishment at any time, or as negatively stated in the

---

[1] Convention Between the United States of America and the Swiss Confederation For The Avoidance of Double Taxation With Respect To Taxes on Income, Article VIII, 2 U.S. Treaties 1751, Treas.Reg. § 509.101 (1955).

[2] Treas.Reg. § 509.110 (1955).

regulation "at no time", during the taxable year. Whether the regulation is permissible exposition or an unwarrantable narrowing of the treaty is decisive of this appeal.

The question arose in this manner. Jules Samann, a naturalized Canadian citizen, received throughout 1954 royalties from the United States while a bona fide resident of Switzerland during that entire year. A permanent establishment in the United States was maintained also by him in 1954 from January 1 to March 15. In accord with the regulation the Commissioner of Internal Revenue denied all exemption to the royalties. The Tax Court concurred. Conceding taxability for the period of the permanent establishment—January 1 to March 15—Samann now appeals the assessment for the remainder of 1954, accusing the regulation as an unauthorized constriction of the treaty. We too must hold against him.

Its purpose, the Convention recites, is "the avoidance of double taxation". Preamble. Discussion of what constitutes generally a permanent establishment under the treaty and the character of the taxpayer's during January 1 to March 15, 1954, as well as the nature of his royalties, is unnecessary in view of Samann's concessa that all of these features meet the treaty's definitions. Articles II(1) (c) and VIII. The case tenders no factual controversy.

 The Convention as a treaty is, of course, "the supreme Law of the Land". United States Constitution, Art. VI, cl. 2; American Trust Co. v. Smyth, 247 F.2d 149, 153 (9 Cir. 1957). Likewise, we start with the additional postulate that the Treasury cannot contract or expand an international compact. Cf. Manhattan Gen. Equip. Co. v. Commissioner, 297 U.S. 129, 56 S.Ct. 397, 80 L. Ed. 528 (1936); M. E. Blatt Co. v. United States, 305 U.S. 267, 279, 59 S.Ct. 186, 83 L.Ed. 167 (1938). But the instant regulation, in our judgment, does not impinge, or engraft anything, upon the terms of the Convention. The regulation is but exegetical.

█ To begin with, the Convention contemplates that "the two contracting States may prescribe regulations necessary to carry into effect the present Convention within the respective States". Art. XIX. Before their publication by the United States, and at the request of the Swiss government, the proposed regulations were submitted to Switzerland. No objection was noted to the one in suit. Thus the Swiss Confederation at least tacitly has approved the presently questioned regulation and has since acquiesced in it. The conduct of the parties under it is strong avowal of the meaning of their document. Choctaw Nation of Indians v. United States, 318 U.S. 423, 431–432, 63 S.Ct. 672, 87 L.Ed. 877 (1943); Factor v. Laubenheimer, 290 U. S. 276, 294–295, 54 S.Ct. 191, 78 L.Ed. 315 (1933).

No indication is given by the Convention to alter the pattern of income taxation prevailing in either nation. The sole object, to repeat, is to avoid assessment in both countries of the same items of income. Conclusive evidence of the signatories' desire to retain their own scheme of taxation is Article II (2) reading as follows:

"In the application of the provisions of the present Convention by one of the contracting States any term not otherwise defined shall, unless the context otherwise requires, have the meaning which such term has under its own tax laws."

██ "Permanent establishment" is almost a tax treaty word of art. These ententes have been quite common since 1936—for example, the second French Convention and those of The Netherlands, Denmark, New Zealand, Norway, and Ireland—and nearly all of them use the term. Furthermore, in each instance the phrase has been qualified by a Treasury regulation conforming it to the "at any time" rule—the current usage instead of the negative "at no time". None of the illustrative treaties contains within itself any pertinently corresponding phrase. These agreements all antedate 1951 and their translation by the Treasury in this

manner and to this extent has continued uninterruptedly ever since their inception. A regulation of such constancy is staunchly endowed with a presumption of validity. Commissioner of Internal Revenue v. Nubar, 185 F.2d 584, 587 (4 Cir. 1950), cert. denied, 341 U.S. 925, 71 S.Ct. 796, 95 L.Ed. 1357 (1951).

Different in terms of course, but corresponding in principle, is the prescription of exemptions of nonresident aliens and foreign corporations within the United States under its tax laws. The significant analogue there of permanent establishment is the category of "not engaged in trade or business within the United States". That status Treasury regulations have consistently defined as alluding to an engagement in this country "at any time during the taxable year". These appurtenant words are not spelled out in the antecedent tax statute. Thus, terminology such as "permanent establishment" and "not engaged in trade or business" has regularly been interpreted in United States tax law as the appellee Commissioner now urges. No offense, then, is done our understanding with the Swiss when, with their consent, we endue the terms of the exemption with the meaning they import in the tax language of the United States.

Finally, taxpayer presses his contention—that his permanent establishment during the first months of 1954 should not vitiate exemption for the rest of the year's royalties—by reference to decisions excluding from taxation that portion of annual receipts coming to hand before the taxpayer becomes a United States tax subject: Marsman v. Commissioner, 205 F.2d 335 (4 Cir. 1953), cert. denied, 348 U.S. 943, 75 S.Ct. 364, 99 L.Ed. 738 (1955); Economy Savings & Loan Co. v. Commissioner, 158 F.2d 472 (6 Cir. 1946); and Lee v. Commissioner, 6 B.T.A. 1005 (1927). In the Marsman and Lee cases the income did not arise in the United States, and did not come within the United States, until the taxpayer entered the country some time after the first of the year. Unlike the instant situation the taxable res was never inside the United States except for the final portion of the year. Obviously it should not have been taxed during its absence. In Economy Savings & Loan the taxpayer's exemption expired in the middle of the fiscal year, through termination of a particular form of business; the new form was a new enterprise, becoming taxable for the first time upon its creation. These cases, of course, demonstrate that income may be taxed and untaxed during different parts of the same year. They are sound in their circumstances. But they do not, in our judgment, override the evidence of the intent we here find in the treaty: that the prerequisite factor of the allowable exemption is indivisible in application.

For these reasons the judgment of the Tax Court is approved.

Affirmed.