**BANKERS & FARMERS LIFE INSURANCE COMPANY, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 79–2254.

United States Court of Appeals,
Fifth Circuit.
Unit A

April 20, 1981.

Rehearing Denied May 14, 1981.

Naman, Howell, Smith & Chase, Hilton H. Howell and Wesley Filer, Waco, Tex., for plaintiff-appellee.

Before BROWN, THORNBERRY and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Bankers & Farmers Life Insurance Company (Bankers & Farmers) sued for a tax refund in federal district court, insisting that it should be allowed to revoke its 1970 election to recognize a taxable gain. This ill-fated election was made on the incorrect assumption that the gain would be offset by loss carryover. Based on a jury finding that the election was made in reliance on a good faith mistake of fact, the district court entered judgment for Bankers & Farmers. We reverse.

*Proceedings Below*

The facts upon which the trial court rendered judgment are uncontested. Bankers & Farmers was incorporated in Texas in 1964 as a qualifying life insurance company subject to the special income taxation scheme set forth in Subchapter L of the Internal Revenue Code, I.R.C. §§ 801–43. Bankers & Farmers' income tax returns reported operating losses in each succeeding year through 1968, small net gains for 1969 and 1970, and a cumulative net operating loss of $209,434.21 for the 1965–70 period.[1]

---

1. In fact, Bankers & Farmers' gross income from underwriting activities and investments ranged from $126,868 in 1965 to $512,363 in 1968. Without the special Subchapter L tax treatment—including deductions for funds held in reserve to cover contingent liabilities on non-participating and group insurance policies pro- vided for in I.R.C. §§ 809(d)(5) & (d)(6), respectively—Bankers & Farmers' *net* earnings from 1965–70 exceeded $721,000. The following table sketches Bankers & Farmers' gains and losses from operations over the period in question.

R. D. Patillo, Bankers & Farmers' accountant, determined that prudent tax planning called for Bankers & Farmers to recognize income for 1970 in order to take advantage of operating loss carryover from 1965 and subsequent years.[2] Therefore, he advised Bankers & Farmers to shift the $83,609.75 balance in its policyholder surplus account to its shareholder surplus account, a taxable transfer under I.R.C. § 802(b)(3).[3] Jesse Derrick, Bankers & Farmers' president, filed a handwritten notice with the corporation's 1970 income tax return announcing the company's election to make the transfer pursuant to I.R.C. § 815(d)(1).[4] Derrick and Patillo conceded

Note 1—Continued

Bankers & Farmers' Income and Tax Liability
1965–70

| Tax Year | Gross Income from Underwriting and Investments[a] | Net Income without Special Subchapter L Deductions[a] | Net Income with Subchapter L Deductions as Reported by B&F's Tax Returns[b] | Net Income with Subchapter L Deductions as Adjusted by IRS Audit[a] |
|---|---|---|---|---|
| 1965 | $126,898 | $ 42,863 | ($ 1,043) | $ 1,005 |
| 1966 | $346,027 | $193,724 | ($75,664) | ($ 3,928) |
| 1967 | $198,312 | $ 19,575 | ($ 6,021) | ($ 6,692) |
| 1968 | $512,363 | $352,956 | ($148,827) | ($ 5,858) |
| 1969 | $310,404 | $ 53,496 | $13,201 | ($ 6,274) |
| 1970 | $305,757 | $ 58,675 | $ 8,919 | ($11,155) |
| TOTALS | $1,799,761 | $721,289 | ($209,434) | ($32,902) |

Losses in parentheses
Sources:
  a. Appellant's Exhibit "G".
  b. Appellee's Brief at 3 (rounded to the nearest dollar).

---

2. Under I.R.C. § 812, net operating losses sustained in any taxable year prior to 1976 may be carried forward as deductions against income earned during the succeeding five year period. Thus, Patillo's thinking went, in order to take advantage of the $1,043 operating loss sustained by Bankers & Farmers in 1965, *see* table in n.1 *supra*, Bankers & Farmers must generate 1970 income against which the loss might be offset or lose the 1965 loss carryover as provided by § 812. The assumed availability of substantial loss carryover from 1966 and succeeding years provided a further incentive for Bankers & Farmers to recognize gain in 1970 against which these losses might be written off.

3. I.R.C. § 802(b) distinguishes three separate categories—or "Phases"—of insurance company income. Phase I, § 802(b)(1), embraces income earned in the form of return on investments. Phase II, § 802(b)(2), applies to income earned from underwriting operations. Phase III, § 802(b)(3), gives insurance companies the opportunity to defer the recognition of taxable gain on funds received in the form of premiums until this premium income is released from an account held in reserve for the satisfaction of contingent liabilities to policyholders (the "policyholders surplus account") to an account from which tax-free distributions may be made to the insurance company's shareholders (the "shareholders surplus account"). *See generally* Harman, *The Pattern of Life Insurance Company Taxation Under the 1959 Act*, 15 Tul.Tax Inst. 686 (1965).

The transfer recommended by Patillo would yield Phase III income.

4. § 815(b)(1) provides:
Election to transfer amounts from policyholders surplus account to shareholders surplus account—
  (A) *In general.*—A taxpayer may elect for any taxable year for which it is a life insur-

at trial that they fully intended the subtraction from the policyholders' account to be effected. Yet, through an inadvertent mistake on the accountant's part, the transfer of funds between accounts was not reflected in the body of the return itself or in subsequent accounting records of the corporation. In fact, the $83,609.75 balance in Bankers & Farmers' policyholders surplus account was never disturbed during any time relevant to the disposition of this dispute.

The IRS audited Bankers & Farmers in 1973. The audit revealed that the operating losses reported for tax years 1965–70 rested on the accountant's mistaken assumption that Bankers & Farmers was entitled to expense its outlays for the purchase of insurance contract blocs as current operating costs rather than amortizing them over the lives of the contracts. Thus, Bankers & Farmers' reports of operating losses during 1965–70 were substantially overstated. *See* columns 3 & 4 in table at n.1, *supra.* The accountant erred further in assessing the tax consequences flowing from Bankers & Farmers' election to recognize gain by shifting funds from the policyholders' account in 1970. The amount of cumulative loss carryover has no bearing on taxable income realized by the § 802(b)(3) procedure; operating loss carryover may be applied against § 802(b)(2) operating income in the succeeding five year period, but it may not be applied to offset § 802(b)(3) income.[5]

These two errors, the IRS audit concluded, resulted in Bankers & Farmers underpaying its 1970 taxes by $38,896.54. Bankers & Farmers paid the assessed deficiency in 1974 and sued for a refund in federal district court in June 1976. Bankers & Farmers' original complaint maintained that the company was entitled to a refund because: (1) in spite of the handwritten election filed with its 1970 tax return, Bankers & Farmers neither elected to transfer funds from its policyholders account nor completed the transfer and, therefore, did not incur a taxable event under § 802(b)(3); (2) the election was invalid because Mr. Derrick had no authority to effect the taxable transaction on the corporation's behalf; (3) the contemplated imposition of a tax on funds never released from the policyholders' account would impermissibly exceed the Sixteenth Amendment's authorization to levy tax on incomes; and (4) assuming that the election was valid, it was made in good faith reliance on a mistake of fact, and is, therefore, revocable. Prior to trial, Bankers & Farmers raised as an additional ground for relief the claim that it was entitled to a refund under I.R.C. § 815(d)(6).

The district court submitted two special issues for the jury's consideration. The first inquired whether Mr. Derrick had authority to effect the election; the second asked whether the election was made in good faith reliance on a mistake of fact. The jury answered both questions affirmatively. Based upon the jury's finding of good faith reliance on a mistake of fact, the court determined that Bankers & Farmers was entitled to relief from its election and entered judgment accordingly.

*The Character of Bankers & Farmers' Mistake*

The district court's opinion correctly isolates three separate mistakes made by the company's accountant as the genesis of

ance company to subtract from its policyholders surplus account any amount in such account as of the close of such taxable year. The amount so subtracted, less the amount of the tax imposed with respect to such amount by reason of section 802(b)(3), shall be added to the shareholders surplus account as of the beginning of the succeeding taxable year.

(B) *Manner and effect of election.*—The election provided by subparagraph (a) shall be made (in such manner and in such form as the Secretary or his delegate may by regula-

tions prescribe) after the close of the taxable year and not later than the time prescribed by law for filing the return (including extensions thereof) for the taxable year. Such an election, once made, may not be revoked.

5. The § 809(d)(4) loss carryover deduction defined in I.R.C. § 812, like all § 809(d) deductions, applies only to Phase I and Phase II income; the deferred gain reflected in Phase III income is computed independently of § 809(d) deductions.

Bankers & Farmers' ill-fated election to transfer funds from the policyholders account: (1) the mistaken decision to expense rather than to amortize purchases of insurance contract blocs; (2) the mistaken assumption—flowing from the first error—about the amount of loss carryover generated in 1965 and succeeding years; and (3) the mistaken belief that Phase II operating loss carryover could be used to offset tax liability on Phase III gain. After instructing the jury not to regard the accountant's legally incorrect advice to Bankers & Farmers as mistakes of fact, the district court submitted to the jury this question: "Was the election to transfer the policyholders' surplus account the result of good faith reliance by Bankers & Farmers' Life Insurance Company on a material mistake of fact?" The jury's affirmative answer, the court determined, placed this case on all fours with *Meyer's Estate v. Commissioner*, 200 F.2d 592 (5th Cir. 1952), which held that taxpayers who elected to treat proceeds from a corporate liquidation as ordinary income on the basis of a mistaken assessment of the corporation's earned surplus were allowed to revoke the election and take capital gains treatment.

[1, 2] We conclude that the district court's reliance upon the jury's response that the election was based upon a mistake of fact and upon *Meyer's Estate* was incorrect. The jury's determinations that Bankers & Farmers relied on a mistake and that the reliance was in good faith are factual findings entitled to the normal deference which courts must give a jury's findings of fact. But the jury's determination that the mistakes themselves were factual bound the trial court not one whit. The trial court's characterization of the mistakes upon which Bankers & Farmers relied as factual is itself a question of law freely reviewable on appeal. *See Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1189 & n.11 (5th Cir. 1979). We conclude that each of the accountant's errors was a misapprehension of the law. Thus, unlike *Meyer's Estate*,

where the IRS stipulated to the characterization of the taxpayers' error as a mistake of fact, this case presents an election inspired wholly by mistakes of law. And, as the available authority makes manifest, good faith reliance on a mistaken legal judgment about the tax consequence of an improvident election does not entitle the taxpayer to revoke the election. *Youngblood v. United States*, 388 F.Supp. 152 (W.D.Tex.1974), *aff'd per curiam*, 507 F.2d 1263 (5th Cir. 1975); 10 J. Mertens, Law of Federal Income Taxation § 60.19 (1976). Therefore, the district court erred in awarding a refund to Bankers & Farmers on the ground that a mistake of fact motivated its costly election.[6]

*Bankers & Farmers' Alternative Theories*

Bankers & Farmers maintains on appeal that three alternative theories advanced at trial will support the judgment below. First, Bankers & Farmers contests the sufficiency of evidence to support the jury's finding that Derrick had authority to make the election. The § 815(d)(1) election document filed with Bankers & Farmers 1970 tax return meets all of the formal requirements specified in Treas.Reg. 1.815–6(a)(2)(i). Bankers & Farmers argues, however, that Treas.Reg. 1.815–6(a)(2)(i) renders a § 815(d)(1) election invalid unless the signatory corporate representative possesses *actual* authority to make the election. On the other hand, Bankers & Farmers maintains, even if actual authority is not required to make a valid election, there is no basis for finding that Derrick had apparent or implied authority to effect an election that posed adverse tax consequences for Bankers & Farmers.

We find these arguments without merit. Derrick executed all of Bankers & Farmers' tax returns for the years prior to 1970. The by-laws of the corporation submitted into evidence by Bankers & Farmers vest in the president of the corporation the authority to execute instruments on the corporation's behalf "except in cases where

---

**6.** In so holding, we do not reach the IRS's contention that I.R.C. § 815(d)(1)(B) prohibits

revocation of such an election even when made in good faith reliance on a mistaken fact.

the signing and executing thereof shall be expressly delegated by the Board of Directors to some other officer or agent of the corporation, or shall be required by law to be otherwise signed, or executed...." By-laws of Bankers & Farmers Life Insurance Co., art. IV, § 4 (Bankers & Farmers' Exhibit No. 2). There is ample evidence supporting the conclusion that Derrick had actual authority and—as the jury found—apparent or implied authority to execute the § 815(d)(1) election on Bankers & Farmers' behalf. Bankers & Farmers would accept without hesitation the beneficial tax consequences of a prudent tax election executed by its chief executive officer. It may not now disown its president's decision when, in hindsight, the tax consequences prove disadvantageous.

Bankers & Farmers' second alternative theory rests on I.R.C. § 815(d)(6), a special relief provision added to the Internal Revenue Code in 1976.[7] Simply put, subsection (d)(6) forgives Phase III tax liability for December payouts to shareholders from the policyholders' account if the shareholders return the distributed funds before the corporation's income tax return is filed the following April. The legislative history reveals a narrow-gauge objective motivating enactment of this provision.[8]

■ In our view, neither the literal language of the statute nor the indicated Congressional purpose support Bankers & Farmers' position. No funds were distributed from the policyholders' account and none were returned by Bankers & Farmers' shareholders. The timing of events specified in § 815(d)(6) is absent. Most important, Bankers & Farmers' election was patently *intentional*, not inadvertent. Therefore, the scope of relief envisioned in subsection (d)(6) does not reach Bankers & Farmers' ill-timed election to recognize to Phase III gain.

Finally, Bankers & Farmers insists that taxation of Phase III gain under these circumstances is unconstitutional as an unapportioned tax on gross receipts. While the Sixteenth Amendment alleviates the Art. I, § 9, cl. 4 apportionment requirement for taxes on incomes, Bankers & Farmers contends the tax applied here is imposed on a taxpayer who incurred net losses rather than income during the period in question.

■ Bankers & Farmers' argument cannot withstand careful scrutiny. An unapportioned tax on the net income of insurance companies is clearly within Congress' Art. I, § 8, cl. 1 taxing power as modified by the Sixteenth Amendment. *Flint v. Stone Tracy Co.*, 220 U.S. 107, 158–60, 31 S.Ct. 342, 351–52, 55 L.Ed. 389 (1911). Bankers & Farmers' net income for the relevant period, but for the special Subchapter L deductions, exceeded $721,000.00. The taxpayer's right to interpose deductions between a gain and the consequent tax liability is a matter of legislative grace, not a constitutional entitlement. *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934). Thus, the imposition of a levy on Phase III gain voluntarily recognized by Bankers & Farmers is plainly within the scope of the governments' power to tax. The § 802(b)(3) tax as applied here is constitutionally valid.

For the foregoing reasons, Bankers & Farmers is not entitled to the claimed tax refund. The district court's judgment is

REVERSED.

---

7. Pub.L.No.94–331.

8. The bill provides relief for the Business Men's Assurance Company of America (BMA) with respect to a distribution made in December 1969. The amount of the *inadvertent* BMA distribution was nearly $5.5 million. When grossed up, the amount subject to tax was about $11.5 million. In this case, the principal shareholder of the company promptly returned the distribution upon learning of the error. H.R.Rep.No.94–1263, 94th Cong., 2d Sess. at 3; [1976] U.S.Cong.Code & Ad.News 1457 (emphasis added).