**Louis M. MUDRY, as Executor of the Estate of Morton Govern, Deceased**

v.

**The UNITED STATES.**

**No. 191–85T.**

United States Claims Court.

Dec. 8, 1986.

Everett Fisher, Greenwich, Conn., for plaintiff. Haden P. Gerrish and Donat C. Marchand, Greenwich, Md., on the brief.

Teresa T. Milton, Washington, D.C., with whom were Acting Asst. Atty. Gen. Roger M. Olsen, Mildred L. Seidman, and George L. Hastings, Jr., Washington, D.C., for defendant.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

In this estate tax case, the plaintiff, Louis M. Mudry, is Executor of the Estate of Morton Govern, Deceased, and is suing on behalf of the decedent's estate.

The case is now before the court on the plaintiff's motion and the defendant's cross-motion for summary judgment.

There is agreement between the parties regarding the material facts in the case, so the litigation is ripe for disposition on the pending cross-motions for summary judgment.

### The Agreed Facts

The material facts are quite brief, and they will be outlined in this part of the order.

Morton Govern (decedent) died in London, England, on December 18, 1980.

The decedent was a citizen of Ireland, and, at the time of his death, he was a domiciliary of Switzerland. At that time, the decedent was neither a citizen nor a resident of the United States. However, the greater part of the decedent's estate was located in the United States.

The Executor duly filed a United States Estate Tax Return on behalf of that portion of the decedent's estate located in the United States. The Executor paid to the Internal Revenue Service (IRS) $131,284.24, the total amount of the tax calculated on the return as being due.

For persons who were citizens or residents of the United States and who died in 1980, section 2010(b) of the Internal Revenue Code of 1954, as amended by the Tax Reform Act of 1976 (Pub.L. No. 94–455; 90 Stat. 1520, 1848), permitted a credit of $42,-500 to be applied against federal estate taxes (26 U.S.C. § 2010(b) (1976)). For those persons who (like the decedent) died in 1980 and who were neither residents nor citizens of the United States, but who had property located in the United States, section 2102(c)(1) of the Internal Revenue Code, as amended, allowed a credit of only $3,600 (26 U.S.C. § 2102(c)(1) (1976)).

The Executor, in filing the tax return for the decedent's estate, used $3,600 as the amount of the proper credit.

### The Claim

On or about December 29, 1983, the Executor of the decedent's estate filed with the IRS a claim for a refund of federal estate tax in the amount of $38,210, out of the total estate tax ($131,284.24) previously paid. The claim was based upon the asserted theory that, in lieu of the $3,600 credit which the Executor had previously used, under section 2102(c)(1) of the Internal Revenue Code, in filing the tax return on the decedent's estate, he was entitled to use, and should have used, under Article III of the Convention between the United States and the Swiss Confederation for the Avoidance of Double Taxation with Respect to Taxes on Estates and Inheritances, 3 U.S.T. 3972, 3974, T.I.A.S. No. 2533 (Swiss Treaty), a "ratable share" of the $42,500 credit provided for in section 2010(b) of the Internal Revenue for the estates of citizens of the United States who died in 1980.

The plaintiff apparently based the "ratable share" of the $42,500 credit upon a calculation that used $1,153,937.41 as the total value of the decedent's estate, and $1,135,208.49 as the portion of the estate located in the United States. Also, in computing the amount of the claim, the Executor evidently took into account the $3,600 credit previously used in the estate tax return.

Being unsuccessful before the IRS, the Executor-plaintiff filed his complaint with the court on April 4, 1985.

### The Issue

The issue to be decided by the court is whether Article III of the Swiss Treaty should be applied in determining the amount of the credit properly allowable to the estate of the decedent, a domiciliary of Switzerland (and not a citizen of the United States) at the time of his death in 1980.

### Discussion

Citing as authority Article III of the Swiss Treaty, the plaintiff argues that the decedent's estate is entitled to the same estate tax credit that the estate of a United States citizen or resident who died in 1980 would receive, but prorated to reflect the proportion of the decedent's estate located in the United States.

Article III of the Swiss Treaty, which became effective September 17, 1952, provides in pertinent part as follows:

In imposing the [estate] tax in the case of a decedent who at the time of death was not a citizen of the United States and was not domiciled therein, but who was at the time of his death a citizen of or domiciled in Switzerland, the United States shall allow *a specific exemption* which would be allowable under its law if the decedent had been domiciled in the United States in an amount not less than the proportion thereof which the value of the total property * * * subjected to its tax bears to the value of the total property * * * which would have been subjected to its tax if the decedent had been domiciled in the United States. * * * [Emphasis supplied.]

Conversely, the next sentence in Article III provides in part as follows:

* * * [I]n the case of an estate of a decedent who at the time of his death was a citizen of or domiciled in the United States, the tax authority in Switzerland shall allow *a specific exemption* which would be allowable under its law if the decedent had been domiciled within its territorial jurisdiction in an amount not less than the proportion thereof which the value of the total property * * subjected to its tax bears to the value of the total property * * * which would have subjected to its tax if the decedent had been domiciled within its territorial jurisdiction. [Emphasis supplied.]

The Swiss Treaty does not contain a definition of the term "a specific exemption," which is used only in the two sentences just quoted from Article III. In this connection, however, it may be noted that, before the Internal Revenue Code (IRC) was amended in 1976, the provisions of the IRC on the taxation of decedents' estates provided for the allowance of "exemptions" to

such estates (rather than the allowance of "credits," as has been true since the 1976 amendments to the IRC). In 1952, for example, the estates of U.S. citizens and residents were entitled to an "exemption" of $100,000 (26 U.S.C. § 812(a) (1952)), and the estates of persons who were neither citizens nor residents of the United States were entitled to an "exemption" of $2,000 (26 U.S.C. § 861(a)(4) (1952)).

In view of the discrepancy between $100,000 and $2,000, and the language used in Article III of the Swiss Treaty, the purpose of the framers of this treaty provision seems clear. They intended that the estate of a decedent who was a citizen or domiciliary of one contracting country, but who left property in the other country, should be able to obtain a proportion of the estate tax "specific exemption" which the other country allowed the estates of its own citizens and domiciliaries.

The parties have not cited, and our own research has not discovered, any previous case dealing with the problem of the continued applicability of Article III of the Swiss Treaty to the estates of Swiss citizens or domiciliaries, despite changes that have been made since 1952 in the estate tax provisions of the Internal Revenue Code.

The Tax Court, however, in the case of *Estate of Burghardt v. Commissioner,* 80 T.C. 705 (1983), *aff'd,* 734 F.2d 3 (3rd Cir. 1984), dealt with a similar problem involving the provisions of a treaty between the United States and the Republic of Italy (Italian Treaty).[1] Article IV of the Italian Treaty, which became effective on October 26, 1956, provided in part as follows:

The contracting State which imposes tax in the case of a decedent who at the time of his death was not a national of such State and was not domiciled in that State but was a national of or domiciled in the other State—

(a) shall allow *a specific exemption* which would be allowable under its law if the decedent had been domiciled in that

State in an amount not less than the proportion thereof which the value of the property subject to its tax bears to the value of the property which would have been subjected to its tax if the decedent had been domiciled in that State * * *. [Emphasis supplied.]

The *Burghardt* case involved the estate of a person who, at the time of death, February 20, 1978, was domiciled in Italy and was a national of Germany. The estate had a total value of $165,583.60, of which $124,640 represented property located in the United States. Between the effective date of the Italian Treaty (1956) and the date of the death involved in *Burghardt* (1978), important changes had been made in the estate tax provisions of the Internal Revenue Code, including the change from "exemptions" to "credits."

In an exhaustive and well-reasoned opinion, which was later affirmed on appeal, the Tax Court decided in *Burghardt* that Article IV of the Italian Treaty was applicable to the facts of the case, and that the estate of the Italian domiciliary was entitled to a credit based upon a percentage of the credit available under the IRC to the estates of citizens or residents of the United States, and was not limited to the flat credit allowed generally to the estates of nonresident aliens under the IRC.

In substance, the provisions of Article III of the Swiss Treaty, involved in the present case, are not distinguishable from the provisions of Article IV of the Italian Treaty, involved in the *Burghardt* case. Also, the facts of the two cases are similar in all significant aspects.

It should be noted that changes made in the IRC provisions relating to estate tax rates between the effective date of the Swiss Treaty in 1952 and the date of our decedent's death in 1980 had placed the estates of nonresident aliens in an extremely favorable position vis-a-vis the estates of United States citizens and domiciliaries, as of 1980. This can readily be seen if we

---

**1.** Convention Between the United States of America and the Italian Republic for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Estates and Inheritances. 7 U.S.T. (Part 3) 2977, T.I.A.S. No. 3678.

compare the tax consequences in 1980 for a $1,000,000 estate of a U.S. citizen or domiciliary with the tax consequences for a $1,000,000 estate of a nonresident alien in 1980. (The portion of the decedent's estate located in the United States apparently exceeded $1,000,000.)

The tax on a $1,000,000 estate of a U.S. citizen or domiciliary in 1980 under section 2001 of the Internal Revenue Code (26 U.S.C. § 2001 (1976)) would be $345,800; and after applying the applicable credit of $42,500 under section 2010 of the Internal Revenue Code (26 U.S.C. § 2010 (1976)), the tax liability would be $303,300.

The tax on a $1,000,000 estate of a nonresident alien in 1980 under section 2101 of the Internal Revenue Code (26 U.S.C. § 2101 (1976)) would be $144,000; and after deducting the credit of $3,600 allowable under section 2102(c)(1) of the Internal Revenue Code (26 U.S.C. § 2102(c)(1) (1976)), the tax liability would be $140,400.

The defendant argues in the present case that, as a result of the extremely favorable position into which the IRC rate changes had placed the estates of nonresident aliens by 1980, Title III of the Swiss Treaty, by necessary implication, had been abrogated and rendered inapplicable to the decedent's estate.

There are several reasons why the defendant's contention in this respect must be rejected.

For one thing, Title III of the Swiss Treaty dealt with estate tax exemptions, an entirely different subject from estate tax rates. As of 1980, estate tax exemptions had been replaced by estate tax credits; and, with respect to estate tax credits, the provisions of the IRC still discriminated against the estates of nonresident aliens, in comparison with the credits allowed the estates of citizens and domiciliaries of the United States. It is true that, by 1980, the $2,000–$100,000 exemption difference that existed in 1952 had been reduced substantially to a credit difference of $3,600–$42,500, but the element of discrimination against the estates of nonresident aliens still persisted.

Furthermore, the preferential treatment accorded the estates of nonresident aliens in the matter of estate tax rates began with the amendment to section 2101 of the IRC that was made by section 108 of the Foreign Investors Tax Act of 1966 (Title I, Pub.L. No. 89–809, 80 Stat. 1539, 1571). It is clear that Congress, in providing through that legislation for the estates of nonresident aliens to be favored over the estates of United States citizens and domiciliaries in the matter of estate tax rates, did not intend to abrogate Title III of the Swiss Treaty, or any other treaty provision. Congress specifically declared in section 110 of the Foreign Investors Tax Act of 1966 (80 Stat. at 1575) that

No amendment made by this title shall apply in any case where its application would be contrary to any treaty obligation of the United States. * * *

In addition, although it is true that Congress may modify a treaty by statute (*Whitney v. Robertson*, 124 U.S. 190, 194, 8 S.Ct. 456, 458, 31 L.Ed. 386 (1888)), courts should not lightly attribute to Congress the intention to modify or abrogate a treaty (*Menominee Tribe of Indians v. United States*, 391 U.S. 404, 413, 88 S.Ct. 1705, 1711, 20 L.Ed.2d 697 (1968); *Pigeon River Improvement, Slide & Boom Co. v. Cox Co.*, 291 U.S. 138, 160, 54 S.Ct. 361, 367, 78 L.Ed. 695 (1934); *United States v. Payne*, 264 U.S. 446, 448, 44 S.Ct. 352, 68 L.Ed. 782 (1924). In the present case, this court does not perceive any intention on the part of Congress to abrogate or modify Article III of the Swiss Treaty.

A further argument made by the defendant is to the effect that Article III of the Swiss Treaty cannot be applied to the present case because Article III refers to the allowance of "a specific exemption," and no exemptions exist under current federal estate tax law. The defendant asserts in this connection that there is a significant difference between exemptions and credits, inasmuch as exemptions reduce the taxable estate while credits directly decrease tax liability.

It has been mentioned earlier in this order that the term "a specific exemption" is not defined in the Swiss Treaty. In this connection, however, we agree with the Tax Court that the replacement of "exemptions" with "credits" by the Tax Reform Act of 1976 did not represent any monumental change, inasmuch as credits merely represent an alternate means of allowing benefits to the estates of decedents. *See Estate of Burghardt v. Commissioner, supra*, 80 T.C. at 715–16.

Moreover, in considering the applicability of Title III of the Swiss Treaty to the present case, we are aided by the precedent that treaties must be liberally construed. *Factor v. Laubenheimer*, 290 U.S. 276, 54 S.Ct. 191, 78 L.Ed. 315 (1933). In *Factor*, the Supreme Court stated (at 293–94, 54 S.Ct. at 195–96) that "if a treaty fairly admits of two constructions, one restricting the rights which may be claimed under it, and the other enlarging it, the more liberal construction is to be preferred." This leads inevitably to the conclusion that Title III of the Swiss Treaty should be broadly construed as being applicable to the present case, despite the circumstance that, during the interval between 1952 and 1980, the allowance of estate tax exemptions was replaced by the allowance of estate tax credits in the federal tax laws.

### Conclusion

For the reasons previously stated in this order, the court concludes, from the papers before the court, that there is no genuine issue as to any material fact, and that the plaintiff is entitled to a judgment, together with interest as provided by law, as a matter of law.

Accordingly, the plaintiff's motion for summary judgment is granted, and the defendant's cross-motion for summary judgment is denied.

The parties are allowed a period of 30 days from the date of this order within which to file a stipulation setting out the amount of the plaintiff's recovery under the decision of the court in this order.

IT IS SO ORDERED.