ESTATE OF JEAN SIMON ANDRE ARNAUD, DECEASED, EMILE FURLAN, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 39812-85.  Filed April 7, 1988.

*A. Thomas Murphy,* for the petitioner.
*Charlotte Mitchell,* for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency in petitioner's Federal estate tax of $51,834.44. After concessions by the parties, the issues for decision are: (1) Whether petitioner is entitled, under the United States-France estate tax convention (the French treaty) [1] to the unified credit against estate tax allowed by section 2010; [2] and, if not, (2) whether the tentative estate tax against which the credit is allowed should be determined under section 2001 or section 2101.

The facts have been fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioner is the Estate of Jean Simon Andre Arnaud. Jean Simon Andre Arnaud is hereinafter referred to as "decedent." Petitioner's executor is Emile Furlan, whose residence at the time the petition was filed was Knight's Landing, California.

Decedent died testate on February 5, 1982. At the time of his death, he was a citizen and resident of France and, as such, is a nonresident alien (a nonresident not a citizen of the United States) for purposes of Federal estate tax law. Petitioner is entitled to the benefits provided in the French treaty that became effective on October 1, 1980.

Included in decedent's gross estate was a parcel of real property located in California, which was owned by decedent and his wife as community property. The fair market value of decedent's one-half interest in the real property at the time of his death was $232,584.

On November 3, 1982, petitioner timely filed a nonresident United States Estate Tax Return (Form 706NA) with

---

[1] The formal name of the French treaty is the "Convention Between the United States of America and the French Republic for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Estates, Inheritances, and Gifts" (Nov. 24, 1978), 32 U.S.T. 1935, T.I.A.S. 9812.

[2] Unless otherwise noted, all section references are to the Internal Revenue Code as amended and in effect in the years in issue, all article references are to the United States-France Estate Tax Convention (the French treaty), and all Rule references are to the Tax Court Rules of Practice and Procedure.

the Internal Revenue Service Center at Philadephia, Pennsylvania. The tax shown due was calculated using a unified credit of $3,600, as provided in section 2102(c). On August 28, 1985, petitioner timely filed an amended Form 706NA. The tax shown due was calculated using a unified credit of $62,800, as provided in section 2010. The parties are in agreement that, to the extent a marital deduction is allowable, the amount is $17,417.

The provisions concerning the Federal estate tax imposed on nonresident aliens' estates are set out in subchapter B of chapter 11, secs. 2101-2108, of the Internal Revenue Code (the Code). Section 2101 imposes a tax on "the transfer of the taxable estate * * * of every decedent nonresident not a citizen of the United States." Sec. 2101(a). The taxable estate includes property situated in the United States at the time of death (sec. 2103) less certain deductions allowed by section 2106. A marital deduction is not allowed, as it is to estates of citizens and residents. See sec. 2056(a). The tentative tax imposed by section 2101 is computed at rates set forth in section 2101(d). A credit of $3,600 against the tentative tax is allowed by section 2102(c).

The provisions concerning the Federal estate tax imposed on estates of citizens or residents[3] are in subchapter A of chapter 11, secs. 2001-2057, of the Code. The estate tax is imposed by section 2001 at rates set out in section 2001(c). The gross estate includes "the value at the time of * * * death of all property * * * wherever situated." Section 2031(a). The taxable estate is the gross estate less the deductions allowed by sections 2053 through 2057. Sec. 2051. A unified credit against the tentative tax determined under section 2001(c) is allowed by section 2010. For estates of decedents dying during 1982, the unified credit was $62,800. Sec. 2010(b).[4]

Under the French treaty, each country "shall impose its tax, and shall allow exemptions, deductions, credits, and other allowances, in accordance with its laws." Art. 12(1). Article 11(2), however, modifies this general rule with respect to the marital deduction. That article provides:

---

[3] We will refer to the estates of citizens as domestic estates and to the provisions of the law imposing the estate tax on domestic estates as the domestic provisions.

[4] A higher domestic unified credit is allowed because the domestic estate tax is imposed at substantially higher rates than the tax on nonresident aliens' estates.

In the case of an individual who was domiciled in France there shall, for purpose of determining the United States tax, be allowed the same marital deduction in effect on the date of signature of this Convention, as if such individual were domiciled in the United States, and in such a case the tax rates applicable if the decedent or donor had been domiciled in the United States shall apply. If the tax determined without regard to the preceding provision of this paragraph is lower than that computed under the preceding provision, the lower tax shall apply.

In construing the effect of article 11(2) on petitioner's Federal estate tax liability, we must bear in mind that the basic aim of treaty interpretation is to ascertain the intent of the parties. *Maximov v. United States,* 299 F.2d 565, 568 (2d Cir. 1962), affd. 373 U.S. 49 (1963). Courts must "give the specific words of a treaty a meaning consistent with the genuine shared expectations of the contracting parties * * * [within] the entire context of [the] agreement." 299 F.2d at 568. If a treaty is ambiguous, it is to be construed "in a broad and liberal spirit, one which prefers the favoring of rights granted under it over a restrictive view of those rights." *Samann v. Commissioner,* 36 T.C. 1011, 1014-1015 (1961), affd. 313 F.2d 461 (4th Cir. 1963).

The parties agree that if petitioner is allowed the marital deduction, it must calculate the tentative tax using domestic rates. Petitioner contends that by requiring the tentative tax to be determined using those rates, article 11(2), along with reference language in sections 2010(a) and 2056(a) to "the tax imposed by section 2001," also requires that the domestic unified credit be allowed against that tentative tax. Respondent contends that tax rates and credits to tax are distinct and that, because article 11(2) refers only to rates, the French treaty leaves petitioner with only the unified credit allowed to nonresident aliens' estates.

We agree with respondent. As we see it, the French treaty imposes the lower of two taxes on petitioner—either that imposed by subchapter B or that imposed on the same gross estate but after allowing a marital deduction and calculated at the higher domestic rates. There is no indication that the French treaty supersedes or modifies the Code provisions imposing the tax or allowing the unified credit; nor is the reference language in section 2010(a) or 2056(a) sufficient to make such a modification. In addition, there is no provision in the French treaty extending the unified

credit available to domestic estates to the estates of residents of France, either generally or in this particular situation. We are satisfied that use of the word "rates" in article 11 does not have this consequence. Cf. *Mudry v. United States*, 11 Cl. Ct. 207, 211 (1986) (holding that the term "specific exemption" in a treaty was equivalent to "unified credit," but noting that tax exemptions are "entirely different" from tax rates). Thus, petitioner's tax is still imposed by section 2101(a), and the only credit allowable is that allowed against the tax imposed by that section—$3,600, which is allowed by section 2102(c). In light of the foregoing, the language of article 11(2) and the content of the French treaty as a whole, we do not think that the result suggested by petitioner could have been within the "shared expectations of the contracting parties." *Maximov v. United States*, 299 F.2d at 568.

Petitioner bases much of its argument on *Estate of Burghardt v. Commissioner*, 80 T.C. 705 (1983), affd. without published opinion 734 F.2d 3 (3d Cir. 1984). That case dealt with the meaning of language in the United States-Italy estate tax treaty that allowed Italian residents to compute their estate tax using a proportionate share of the "specific exemption" allowable to domestic estates. After the United States-Italy estate tax treaty had gone into effect, the unified credit replaced the estate tax deduction. We held that, in order to effectuate the understanding of the parties, the provision allowing the specific exemption should be construed to allow estates of Italian residents to compute their estate tax using a proportionate part of the unified credit allowed to domestic estates. Had we not reached that result, the provision in question would have had no effect under the changed law, and estates of residents of Italy would have been in the same position as other nonresident aliens' estates, despite the treaty provision that had placed them in a more favorable position before the change was made in domestic law.

We think that petitioner's reliance on *Estate of Burghardt* is misplaced. That case dealt with a different treaty with substantially different terms.[5] In addition, the provision in

---

[5] In this regard, we note that the United States-France estate tax treaty which the French treaty applicable herein replaced, contained language that was in substance the same as the

question here is not ambiguous, so we need not construe it liberally to meet the intent of the parties. Finally, there has been no change in the structure of the Federal estate tax since the French treaty was signed that requires us to interpret the provision, in light of changed circumstances, to avoid rendering it a nullity.

We do not agree with petitioner's contention that *Estate of Burghardt* stands for the proposition that, in all cases involving the estate tax imposed upon domestic estates or those of nonresident aliens, there is, at least where a treaty applies, a general threshold exclusion of the amount of the gross estate correlated with the applicable unified credit—in this case $225,000 and $62,800, respectively. Our reference to the report of the Joint Committee on Taxation commenting on the beginning level of taxation of estates (see 80 T.C. at 716), was solely in the context of our analysis as to whether the term "specific exemption" included "unified credit" for purposes of applying the United States-Italy estate tax treaty.

Having found for respondent on the first issue, we must decide the rates at which the tentative tax should be calculated. We agree with petitioner that it should calculate its tentative tax using the rates in section 2101(d), rather than the rates in section 2001(c), as respondent suggests, but without allowance of the marital deduction. The last sentence of article 11(2) provides: "If the tax determined without regard to the preceding provision of this paragraph is lower than that computed under the preceding provision, the lower tax shall apply." It is apparent, and respondent agrees, that it was the intent of the parties to the French treaty that the ultimate tax burden be the lower of the two taxes. Thus, if petitioner's estate tax is computed without allowance of the marital deduction and a tax lower than

language that we construed in *Estate of Burghardt v. Commissioner,* 80 T.C. 705 (1983), affd. without published opinion 734 F.2d 3 (3d Cir. 1984). Compare Convention Between France and United States of America about Double Taxation and Fiscal Assistance (Oct. 18, 1946), art. 4, 64 Stat. B3, B10, T.I.A.S. 1982, with Convention Between the United States of America and the Italian Republic for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Estates and Inheritances (Mar. 30, 1955), art. IV, 7 U.S.T. 2977, T.I.A.S. 3678.

that under article 11(2), results, it is required to pay only the smaller amount.[6]

There is nothing in article 11(2) indicating that its application is optional with the taxpayer. Rather, article 11(2) appears to mandate two alternative calculations and extend to the taxpayer, as a matter of right, the benefit of the lower tax thus produced. Such being the case, petitioner is entitled to have its tax calculated without the marital deduction and with the unified credit of $3,600. Cf. *Taylor v. Commissioner*, 27 T.C. 361, 372 (1956), affd. on another issue 258 F.2d 89 (2d Cir. 1958), where we rejected respondent's contention that the alternative tax on capital gains applies only when the taxpayer originally elects its use. See also *Lone Manor Farms, Inc. v. Commissioner*, 61 T.C. 436, 442 (1974), affd. without published opinion 510 F.2d 970 (3d Cir. 1975).

Even if we were to conclude that petitioner's claim of the marital deduction constituted an election, we would reach the same result. If there were no applicable treaty between the United States and France, petitioner would clearly be required to compute its estate tax as previously set forth. Article 12(5) provides in part: "The provisions of this Convention shall not result in an increase in the amount of tax imposed by either Contracting State under its domestic laws." In other words, no taxpayer should be placed in a worse position than he would have been in without the treaty. The provisions of article 11(2) in respect of the lower of the two taxes are consistent with this conclusion. Thus, even though an election is generally irrevocable if made

---

[6]We note for illustrative purpose the following example from petitioner's brief:

Tax computed under art. 11(2):

| | |
|---|---:|
| Gross estate | $232,584 |
| Marital deduction | 17,417 |
| Taxable estate | 215,167 |
| Tentative tax under sec. 2001(c) | 59,654 |
| Unified credit under sec. 2102(c) | 3,600 |
| Tax liability | 56,054 |

Tax computed under subch. B without benefit of treaty provisions:

| | |
|---|---:|
| Gross estate | $232,584 |
| Marital deduction | N/A |
| Taxable estate | 232,584 |
| Tentative tax under sec. 2101(d) | 21,910 |
| Unified credit under sec. 2102(c) | 3,600 |
| Tax liability | 18,310 |

under a mistaken view of the law (see *Bankers & Farmers Life Insurance Co. v. United States,* 643 F.2d 234, 238 (5th Cir. 1981)), the French treaty abrogates the application of this rule under the circumstances herein.

In summary, we hold that petitioner's tax shall be the lower tax produced by the following calculations: (1) Allowing the marital deduction and computing the tax using the domestic rates in section 2001(c) and the nonresident alien credit allowed by section 2102(c), or (2) computing the tax without the marital deduction using the same credit and the nonresident alien rates of section 2101(d).

To reflect the foregoing, and to allow the parties to compute petitioner's funeral and administration expense deductions,

*Decision will be entered under Rule 155.*