Donald J. WEST, Administrator of the
Estate of Sue Morak, Deceased,
Plaintiff, Deceased,

v.

UNITED STATES of America,
Defendant.

Civ. No. 88–3015.

United States District Court,
W.D. Arkansas,
Harrison Division.

Nov. 21, 1988.

Richard F. Hatfield, Little Rock, Ark., for plaintiff.

Michael N. Wilcove, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., J. Michael Fitzhugh, U.S. Atty., Fort Smith, Ark., Richard J. Neubauer, Dist. Counsel, IRS, Nashville, Tenn., for defendant.

MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

*Introduction*

Pending before the court is defendant's motion for summary judgment. The material facts are not in dispute.

This case concerns the federal income tax liability of Sue S. Morak for the 1984 tax year. At the time of the death of Sue Morak on July 8, 1984, she owned numerous United States Series E Savings Bonds. Plaintiff, Donald J. West, was appointed the administrator of Sue Morak's estate in December, 1984, and timely filed her federal income tax return for that year.

The bonds were maintained in a safe deposit box held jointly by Sue Morak and Dwight and Kathleen Davison. *See* p. 8, Newton County Chancery Court transcript, supplementary joint exhibit of the parties, *Newton County v. Davison,* 289 Ark. 109, 709 S.W.2d 810 (1986). The safe deposit box held $324,987.35 in bonds. The bonds reflected Sue Morak and various members of her family as the owners. All of the family members named on the bonds predeceased Sue Morak. *See* order of Newton County Chancery Court, dated May 2, 1985, supplementary joint exhibit, *Newton County v. Davison, supra.* Sue Morak died intestate with no known heirs.

About three years prior to Mrs. Morak's death, she and the Davisons agreed to lease a safe deposit box as joint tenants with right of survivorship. After Morak's death, the Newton County Chancery Court found that the Davisons and Morak were joint owners of the contents of the box and the survivors would be complete owners of the contents. *See* pp. 39–52 of Newton County Chancery Court file, supplementary joint exhibit, *Newton County v. Davison, supra.*

Believing the Davisons to be the owners of the bonds upon Morak's death, plaintiff elected under 26 U.S.C. § 454(a), to include in Morak's gross income for 1984 the increase in the redemption value of the savings bonds for that year. The interest income on the bonds could have been reported by Morak annually, upon disposition, or at maturity, rather than by election under § 454(a).

26 U.S.C. § 454(a) provides:

If, in the case of a taxpayer owning any non-interest-bearing obligation issued at a discount and redeemable for fixed amounts increasing at stated intervals or owning an obligation described in paragraph (2) of subsection (c), the increase in the redemption price of such obligation occurring in the taxable year does not (under the method of accounting used in computing his taxable income) constitute income to him in such year, such taxpayer may, at his election made in his return for any taxable year, treat such increase as income received in such taxable year. If any such election is made with respect to any such obligation, it shall apply also to all such obligations owned by the taxpayer at the beginning of the first taxable year to which it applies and to all such obligations thereafter acquired by him and shall be binding for all subsequent taxable years, unless on application by the taxpayer the Secretary permits him, subject to such conditions as the Secretary deems necessary, to change to a different method. In this case of any such obligations owned by the taxpayer at the beginning of the first taxable year to which his election applies, the increase in the redemption price of such obligations occurring between the date of acquisition (or, in the case of an obligation described in paragraph (2) of subsection (c), the date of acquisition of the series E bond involved) and the first day of such taxable year shall also be treated as income received in such taxable year.

As can be seen, once the election is made, it applies to all such savings bonds owned by the taxpayer and all such savings bonds subsequently acquired, unless the Secretary permits the owner to change to a different method of reporting the bonds.

Based upon the advice of a certified public accountant for the estate that the tax burden of the Davisons, the assumed owners of the bonds, would be less than that for the estate, plaintiff chose to elect in the manner aforementioned under § 454(a) and the Davisons agreed to pay the estate for the additional income tax paid by the estate on the bonds as a result of the election.

The Davisons "house of cards" collapsed rather abruptly in May, 1986, when the Arkansas Supreme Court held that the bonds were not owned by the Davisons, but rather by the State of Arkansas or Newton County, Arkansas, via escheat. Plaintiff alleges that had he known that the Davisons did not own the bonds, he would not have elected under § 454(a) to include the increase in the redemption value of the bonds in Sue Morak's gross income for 1984, as this resulted in an increased tax

burden for the estate without any manner for the estate to recoup this loss.

Plaintiff subsequently requested permission of the Commissioner of Internal Revenue to revoke the election under § 454(a). The Commissioner denied permission to do so.

Plaintiff filed this action on April 4, 1988, contending that the Commissioner abused his discretion in denying permission for plaintiff to retroactively revoke the § 454(a) election. As a result of the election, the estate paid $78,601.00 in taxes which otherwise would not have been due. Plaintiff seeks a refund of this sum.

### Discussion

Initially it is noted that although the plaintiff speaks in terms of his having requested a change in accounting methods, he seeks not to change the method of reporting the Series E bonds in subsequent years, but rather to retroactively revoke an election by way of amended return.

It is interesting to note the lack of reported cases precisely on point, despite that the provisions of § 454 have been in effect substantially unchanged since 1939. *See* § 42, Internal Revenue Code of 1939. However as to revocations of elections in general, the Supreme Court held long ago that once an election as to a method of accounting for an item has been made on a return, it may not be changed after the time for filing the return has expired. *See Pacific National Co. v. Welch,* 304 U.S. 191, 58 S.Ct. 857, 82 L.Ed. 1282 (1938). In *Pacific National,* the Supreme Court wrote:

Change from one method to the other, as petitioner seeks, would require recomputation and readjustment of tax liability for subsequent years and impose burdensome uncertainties upon the administration of the revenue laws. It would operate to enlarge the statutory period for filing returns (§ 53(a) to include the period allowed for recovering overpayments (§ 322(b)). There is nothing to suggest that Congress intended to permit a taxpayer, after expiration of the time within which return is to be made, to have his

tax liability computed and settled according to the other method. By reporting income from the sales in question according to the deferred payment method, petitioner made an election that is binding upon it and the commissioner.

*Pacific National,* at 194–95, 58 S.Ct. at 858–59.

This rule has been followed by numerous courts in many different contexts. In *Jacobs v. Commissioner,* 224 F.2d 412 (9th Cir.1955), the court upheld a refusal to permit a retroactive change of accounting for reporting the sale of land. In *Rosenfield v. United States,* 156 F.Supp. 780 (E.D.Pa.1957), aff'd 254 F.2d 940 (3rd Cir. 1958), *cert. denied* 358 U.S. 833, 79 S.Ct. 55, 3 L.Ed.2d 71, the court similarly refused to allow an executor to revoke an election to have the gross estate valued at a date subsequent to date of death pursuant to § 811(c) of the 1939 Internal Revenue Code. In *Lord v. United States,* 296 F.2d 333 (9th Cir.1961), the court upheld the Commissioner's decision not to allow the taxpayer to retroactively modify the percentage of completion method used to report income on contracts.

*Youngblood v. United States,* 388 F.Supp. 152 (W.D.Tex.1974), *aff'd* per curiam 507 F.2d 1263 (5th Cir.1975) similarly involved the government's refusal to allow a taxpayer to amend his income tax returns so as to revoke an election to report income from land sales on an installment basis. In denying the taxpayer's right to do so, the court said:

The well-established rule is that once a taxpayer has made an election, he cannot later change his mind. *Pacific National Co. v. Welch* (Citation omitted); *Commissioner v. Saunders,* 131 F.2d 571 (5th Cir.1942). The Court finds that under the circumstances it was not an abuse of discretion for the government to accept the late return and the election contained therein.

*Youngblood* at 153–54.

A case often cited in support of the taxpayer's right to amend a return and revoke an election is *C.H. Mead Coal Co. v. Commissioner of Internal Revenue,* 106 F.2d

388 (4th Cir.1939). In that case the court stated that an amendment to a tax return should have been allowed when the taxpayer had no knowledge that an already declared election had to be repeated, the mistake was an honest, inadvertent one, and the amendment was offered within a reasonable time. The court in *Youngblood* distinguished *Mead* on the basis that in *Mead* much emphasis was placed on the fact that there had been "radical changes in the law, of which the petitioner had scant notice", *Mead* at 391, and the construction of the law by the Commissioner was harsh and narrow.

The Court of Appeals for the Eighth Circuit addressed this general issue in *Bookwalter v. Mayer*, 345 F.2d 476 (8th Cir.1965). The court indicated that the Commissioner's action in rejecting an amendment can be overturned where the Commissioner has abused his discretion, citing *Mead*. The court viewed several factors in holding that the amendment should have been allowed by the government:

> The Commissioner's action in rejecting an amendment can be overturned where the Commissioner has abused his discretion. *C.H. Mead Coal Co. v. Commissioner, supra; Morrow, Becker & Ewing, Inc. v. Commissioner,* [57 F.2d 1 (5th Cir.1932)], *supra*. In *Mead Coal Co.,* the court states:
>> 'If an amendment made to correct a mistake, presented within a reasonable time, is rejected through a narrow and harsh construction of the law, to the detriment of the taxpayer, such rejection is arbitrary and unjust. It certainly is not the duty of the Commissioner to deprive a taxpayer of any rights justly due him.' 106 F.2d 388, 391.

In our present case, the only reason assigned for refusing the amendment was the Commissioner's view of the law that no amendment could be permitted. We have held such view to be erroneous. There is no question about taxpayers' good faith in this transaction and his desire to comply with all applicable laws and regulations. The regulation here involved was a new one concerning which the taxpayers had no actual knowledge. At the time of the sale, they had frequent visits with the revenue agents for the purpose of securing information to enable them to protect their right to installment treatment. No unreasonable delay is involved here and no prior inconsistent position has been taken by the taxpayers. The Commissioner does not contend that the filing of the original return constituted an election. It appears beyond question that no prejudice has resulted to the Government by reason of the slight delay in filing the amendment. While what the court said in its attempt to support the judgment on an estoppel theory does not support the judgment upon the basis of estoppel, such findings do clearly demonstrate the court's view that the taxpayer acted at all times in complete good faith. We conclude that the Commissioner abused his discretion in refusing to accept the amendment to the return. By the amendment, the taxpayers came into full compliance with the regulation and hence they were entitled to the benefit of installment treatment of the profits realized from the real estate sale.

*Bookwalter* at 480–81.

However, *Bookwalter* involved only an amended return, not a legal "election" under the Code. The court in *Bookwalter* indicated clearly that the rule is different as to an "election":

> The government now concedes that an election does not have to be made in a timely return but argues that if a timely return is made with which the required statement is not included, taxpayers cannot thereafter elect to have the gain taxed by the installment method. It is conceded taxpayers made no election in their 1958 return. Thus, this is not a case in which a taxpayer elects to report a sale on some method and then attempts to change his election, which he is prohibited from doing. *See Pacific Nat'l Co. v. Welch* (citation omitted).

*Bookwalter* at 478.

Other courts have allowed a taxpayer to retroactively revoke an election when the

election was illegally made in the first instance. In *Mamula v. Commissioner,* 346 F.2d 1016 (9th Cir.1965) the court held that an illegal election could be changed retroactively, but that an election valid when made cannot:

We agree with the reasoning of the Supreme Court without reservation, on the facts of the *Pacific National* case. Once a taxpayer makes an election of one or two or more alternative methods of reporting income, he should not be permitted to convert, of his own volition, when it later becomes evident that the has not chosen the most advantageous method....

The present case does not involve an election by a taxpayer to which he is conclusively bound. Indeed, the taxpayer could not be bound by his election for it was a nonallowable choice—it was not allowable and not allowed. No one was bound.

*Mamula* at 1018.

In *Hornberger v. C.I.R.,* 289 F.2d 602 (5th Cir.1961), the court found that taxpayers, who in good faith and without negligence on their part, failed to report a sale at all on their original income tax returns but filed an amended return, were entitled to all of the benefits of the applicable provision of the tax code, no "election" having been involved:

It may appropriately be observed that whenever Congress has intended to provide for an 'election' of treatment for tax purposes it has had no difficulty in expressing such intent.

*Hornberger* at 606.

Because no "election" was involved, there was no obstacle to the corrective amendment to the return.

In *Bankers & Farmers Life Ins. Co. v. United States,* 643 F.2d 234 (5th Cir.1981), petitioners sued for a tax refund, insisting that it should be allowed to revoke its 1970 election to recognize a taxable gain which was made on the incorrect assumption that the gain would be offset by loss carryover. The court reversed a jury verdict in favor of petitioners, stating:

[A]s the available authority makes manifest, good faith reliance on a mistaken

legal judgment about the tax consequences of an improvident election does not entitle the taxpayer to revoke the election (citing *Youngblood*).

*Bankers & Farmers* at 238.

The court in *Bankers & Farmers* refused to decide whether the applicable section of the tax code (in that case § 815(d)(1)(B)) absolutely prohibits revocation of such an election:

[W]e do not reach the IRS's contention that I.R.C. § 815(d)(1)(B) prohibits revocation of such an election even when made in good faith reliance on a mistaken fact.

*Bankers & Farmers* at 238, n. 6.

The court concluded, "most importantly, Bankers & Farmers' election was patently *intentional,* not inadvertent." *Bankers & Farmers* at 239 (emphasis in original).

Plaintiff relies heavily upon *Meyer's Estate v. Commissioner,* 200 F.2d 592 (5th Cir.1952). In that case petitioners relied in good faith upon the earned surplus account figure of $79,728.86 as shown in the corporate books in electing to have any gain taxed to them under the provisions of § 112(b)(7) (I.R.C. of 1939). Although this figure failed to reflect an $815,049.75 increase in surplus resulting from the transfer of original untaxed dividends back to Meyer, Inc. in a previous merger, the court held that the cases precluding revocation of an election:

[M]ay be distinguished either on the ground that they did not involve a stipulation as to a mistake of fact motivating the election or arose under divergent tax statutes providing for optional methods of reporting income where it was held that to permit withdrawal of the election would impose burdensome uncertainties upon the administration of the revenue laws. Considerations of administrative necessity requiring the usual taxpayer to stand by his election once made are not so compelling as to require a like result here.

*Meyer's Estate* at 596.

Absent a good faith, material, mistake of fact, however, the court in *Meyer's Estate* noted:

The Tax Court correctly held that the regulation prohibiting revocation of the elections is valid and that petitioners could not revoke valid elections as a matter of right.

*Meyer's Estate* at 596.

After reviewing the applicable case law, plaintiff urges that he in good faith labored under a material mistake of fact in electing, pursuant to § 454(a), to include in gross income for 1984 the increase in the redemption value of the bonds for that year. The mistake of fact which plaintiff contends renders the Commissioner's decision against allowing revocation of this election an abuse of discretion is the mistake as to the ultimate owners of the bonds upon the death of Sue Morak.

The court does not find this argument persuasive insofar as it attempts to draw a parallel between the instant case and *Meyer's Estate* and to garner support from *Mamula*, *Bookwalter*, and *Mead*.

■ First, the court holds that an election under § 454(a) is binding and cannot be retroactively revoked, although such an election may be prospectively revoked in the discretion of the Commissioner. The election at issue in this case is one providing for optional methods of reporting income and to permit withdrawal of the election would impose burdensome uncertainties upon the administration of the revenue laws. As such it falls squarely within the general rule of *Pacific National* and outside of the exceptions created in *Meyer's Estate* and *Mead*.

■ Secondly, there is no similarity between *Mead* and the instant case. No amendment is sought to correct a factual mistake. A reasonable person could well question the *bona fides* of the administrator in electing a method of reporting bond income which resulted in a greatly heavier tax burden for the estate. Although plaintiff alleges that the Davisons agreed to reimburse the estate for the additional tax "bite" resulting from the election, it is clear that the end result would merely make the estate whole while saving the Davisons thousands of tax dollars. Such an arrangement could well be questioned because although the administrator has a fiduciary obligation to the estate, the only beneficiaries of this scheme were strangers to the estate.

The election, although most unwise from the standpoint of the estate, was clearly authorized by law and hence not illegal as was the case in *Mamula*. It is equally clear that plaintiff seeks to revoke an "election" rather than merely "amend" a return as was the situation in *Hornberger*.

Further, to the extent that *Bankers & Farmers* implies that a good faith material mistake of fact may justify the retroactive revocation of a binding election, we are not here presented with a mistake of fact. Although plaintiff argues that "the facts which were the basis for plaintiff's decision were drastically different" after the Arkansas Supreme Court held the Davisons did not own the bonds, the true case is that the "facts" did not change at all. Plaintiff's understanding of the legal consequences of the jointly owned safe deposit box was certainly in error, see *Newton County v. Davison, supra,* however, plaintiff's *motive* in making the patently intentional election is completely irrelevant. This case does not even demonstrate an erroneous judgment as to the tax consequences of the election. The tax consequences to the estate were exactly those contemplated at the time of the election and the election was no more beneficial to the estate at the time of election than it is now. The most that can be said is that the decision of the Arkansas Supreme Court in *Newton County v. Davison* was disastrous for the Davisons, and because the Davisons were precluded from reimbursing the estate, for the estate as well. However, had the best interests of the estate been the sole motivation for the plaintiff at the time of the election, the election would not have been made.

The Administrator's motives in making the election were based upon extraneous considerations he may or may not have had the right to consider, but in any event certainly have no bearing on his right to revoke a knowing and deliberately chosen election under § 454(a).

Therefore, although the court holds that an election under § 454(a) may not be retroactively revoked even when made in good faith reliance on a material mistake of fact, the plaintiff in this case could not avail himself of the rule if the contrary were true.

By reason of the foregoing, judgment will be entered for the defendant and plaintiff's complaint will be dismissed with prejudice.