PETER A. JOHNSON AND CLAIRE P. LYON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket No. 15585-90
United States Tax Court
T.C. Memo 1991-645; 1991 Tax Ct. Memo LEXIS 696; 62 T.C.M. (CCH) 1629; T.C.M. (RIA) 91645; December 26, 1991, Filed *696 Decision will be entered under Rule 155.
Peter A. Johnson and Claire P. Lyon, pro se. Ronald F. Hood, for the respondent. TANNENWALD, Judge. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in and additions to petitioners' Federal income tax for 1986 as follows: Additions To Tax
Deficiency
[1]Sec. 6653(a)(1)(A) Sec. 6653(a)(1)(B)
Sec. 6661
$ 24,790.00
$ 1,240.00
*
$ 6,198.00
The main issue for decision is whether petitioners, having elected to liquidate Peter A. Johnson Associates, Inc. (PAJA), under section 333 may revoke, amend, or escape the consequences of that election. If this issue is resolved in favor of respondent, then the issues involving the applicability of sections 6653(a)(1)(A) and (B) and 6661 will have *697 to be decided, as will the issue relating to petitioners' claim of certain offsets. FINDINGS OF FACT Some of the facts have been stipulated and are so found; the stipulation and the accompanying exhibits are incorporated herein by reference. Petitioners, Peter A. Johnson (Johnson) and Claire P. Lyon (Lyon), husband and wife, were residents of Hanover, New Hampshire, at the time their petition was filed. They filed a joint Federal income tax return on the cash basis for 1986 with the Internal Revenue Service Center, Andover, Massachusetts. PAJA is a management consulting firm through which Johnson rendered consulting services. At all pertinent times, all of PAJA's issued and outstanding shares were owned by Johnson, Lyon, and the Peter A. Johnson Associates, Inc. Pension Trust (Pension Trust). Johnson is also a certified public accountant. Through PAJA, Johnson consulted on a full-time basis until 1985. At that time, he accepted a full-time position with the Dartmouth-Hitchcock Medical Center in New Hampshire. As a result, Johnson was no longer as available to render consulting services. A shareholder resolution authorizing the liquidation of PAJA under section 333 was adopted *698 on December 28, 1986. Form 966, Corporate Dissolution or Liquidation, was completed by Johnson in his capacity as president of PAJA on December 28, 1986. At the same time, Forms 964, Election of Shareholder Under Section 333 Liquidation, were signed by the three PAJA shareholders. Forms 966 and 964 were filed by Johnson with the Internal Revenue Service Center in Andover, Massachusetts, on December 31, 1986. At the same time that the Forms 964 and 966 were prepared and filed, Johnson prepared balance sheets of PAJA for the periods ending June 30, 1986, and December 28, 1986, respectively. Each of the balance sheets disclosed retained earnings of $ 96,311.33. Johnson completed and filed a Form 1120-A Federal corporate income tax return for PAJA for the year ending June 30, 1986, with the Internal Revenue Service Center, Andover, Massachusetts, on January 8, 1987. The balance sheet of PAJA for the period ending June 30, 1986, was reflected on that return. At the same time, Johnson prepared a Form 1120 for PAJA for the short tax year ending December 28, 1986. It was not filed with the Internal Revenue Service Center, Andover, Massachusetts, until February 2, 1988. [2] No balance *699 sheet was included in that return but was furnished to respondent on or about April 6, 1988; it showed retained earnings of $ 96,311.33. After reserving $ 18,000 for tax liabilities of PAJA, cash distributions in liquidation were made to PAJA shareholders on December 28, 1986, as follows: Johnson
$ 64,607.32
Lyon
63,232.69
Pension Trust
9,622.37
In addition to the foregoing, the following checks payable to PAJA were deposited in petitioners' personal bank account on January 8, 1987: (1) Check dated December 22, 1986, from Collier, Shannon, Rill & Scott, in the amount of $ 2,400.00, (2) Check dated October 21, 1986, from the U.S. Treasury in the amount of $ 2,240.08, (3) Check dated October 28, 1986, from Spriggs, Bode & Hollingsworth in the amount of $ 2,287.00. On March 26, 1987, there was deposited *700 in petitioners' personal bank account a check, dated March 18, 1987, from Spriggs, Bode & Hollingsworth, payable to PAJA, in the amount of $ 6,727.00 in payment of services during the period November 1, 1986, through March 10, 1987. In May 1988, petitioners received a check from the U.S. Treasury Department payable to PAJA in the amount of $ 6,661.64, representing a tax refund. The check was returned by Johnson to the Internal Revenue Service on July 10, 1988. On their 1986 tax return, petitioners reported only the total of the amounts received from PAJA on December 28, 1986, i.e., $ 127,840.01, as proceeds from the sale of PAJA stock. The return contained no reference to the liquidation. Following PAJA's liquidation, Johnson continued to provide consulting services in his individual capacity and reported his consulting activities on Schedule C of petitioners' tax returns. Consulting income received in 1987 was deposited directly into petitioners' joint checking account. PAJA's bank account was closed on January 23, 1987. The 1985 and 1986 Federal income tax returns of both PAJA and petitioners were audited by the Internal Revenue Service. As a result of the audit, on April *701 6, 1988, Johnson filed an amended Form 966 seeking to revoke the original section 333 election in favor of a liquidation under section 331. PAJA was reincorporated in February 1991. OPINION The principal issue before us is whether the proceeds received by petitioners on the liquidation of PAJA should be taxable, in part, as ordinary income and, in part, as long-term capital gain as provided in section 333 or entirely as long-term capital gain under section 331. Resolution of this issue turns upon the effect to be given to documents which appear to constitute an election under section 333 and actions to implement those documents. Petitioners assert that: (1) The section 333 election can be revoked or amended; (2) if the election cannot be revoked or amended, the election was defective; and (3) the reincorporation of PAJA in 1991 voided the election. Respondent disputes petitioners' contentions, asserting the irrevocable nature of a section 333 election under that section and the regulations thereunder. Sec. 1.333-2(b)(1), Income Tax Regs.[3]
*702 Section 331, which governs complete liquidations in general, provides in part as follows: SEC. 331. GAIN OR LOSS TO SHAREHOLDERS IN CORPORATE LIQUIDATIONS (a) Distributions In Complete Liquidation Treated As Exchanges. -- Amounts received by a shareholder in a distribution in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock.
If the stock is a capital asset, as is the case herein, gain recognized in a section 331 liquidation is capital gain. Section 333, which originated as section 112(b)(7) of the Revenue Act of 1938, ch. 289, tit. 1, 52 Stat. 487, was enacted to facilitate the liquidation of personal holding companies. [4]
*703 Under section 333, [5] qualified electing shareholders avoid recognition of gain on shares owned at the time the plan of liquidation was adopted with certain exceptions. One exception, which is involved herein, is that gain recognized under section 333 is treated as a dividend, i.e., ordinary income, to the extent that the corporation has accumulated earnings and profits. *704 Amendment or Revocation of Election
Petitioners initially argue that the PAJA shareholders' election to liquidate under section 333 is subject to amendment or revocation for the following reasons: (1) The election was based on a mistake of fact, (2) the number of shares subject to the election was erroneously reported, (3) amendments to Form 966 are permitted, and (4) principles of fairness and equity warrant a revocation of the election. This Court has consistently refused to allow taxpayers to escape the consequences of a section 333 election where their election was based on assumptions that later proved to be incorrect. Cohen v. Commissioner, 63 T.C. 527 (1975), affd. without published opinion 532 F.2d 745 and 532 F.2d 747 (3d Cir. 1976); Estate of Meyer v. Commissioner, 15 T.C. 850 (1950), revd. on this issue 200 F.2d 592 (5th Cir. 1952). [6] Our opinions have recognized the distinction between a mistake of fact and a mistake of law but have concluded that, in each of these cases, there was a mistake of law. *705 Petitioners endeavor to come within the exception provided in Meyer's Estate v. Commissioner, 200 F.2d 592 (5th Cir. 1952), revg. 15 T.C. 850 (1950), claiming the election to liquidate PAJA emanated from a mistake of fact, namely that, at the time of liquidation, they believed the earnings and profits of PAJA to be zero rather than $ 96,311.33, the correct figure. In Meyer's Estate v. Commissioner, supra, the taxpayer-shareholders sought to rescind an election to liquidate a corporation under section 112(b)(7) of the Internal Revenue Code of 1939. The parties in that case had stipulated that, prior to making the election, the shareholders "relied on the earned surplus" as shown in the books of the corporation and the reports of the auditors, who were certified public accountants -- a figure which subsequently turned out to be erroneous because of a failure to take into account a carryover of earned surplus in a prior reorganization. While recognizing that "there is, under settled law, no election without full knowledge of the facts," this Court held that the taxpayers had failed to demonstrate a lack of knowledge in respect of the correct *706 earned surplus of the corporation at the time of liquidation, emphasizing that they had been directly involved in the earlier reorganization. 15 T.C. at 868. Under these circumstances, we concluded that the stipulation as to reliance was not determinative and that the taxpayer had made a mistake of law. The Court of Appeals for the Fifth Circuit interpreted the phrase "relied upon" to connote reliance in good faith without knowledge of the true facts and concluded that the stipulation constituted an agreement by respondent that the taxpayer had made an excusable mistake of fact. Meyer's Estate v. Commissioner, 200 F.2d at 596-597. Petitioners' reliance on Meyer's Estate is misplaced. Leaving aside the fact that we have never agreed with the reasoning in Meyer's Estate, [7] the facts of that case are readily distinguishable from those involved herein. Of critical importance is the fact that respondent has not stipulated any lack of knowledge on petitioners' part concerning the earnings and profits of PAJA. To the contrary, respondent has repeatedly asserted that petitioners had knowledge of the correct earnings and profits at the time *707 of the adoption of the plan of liquidation.
The corporate Federal income tax return of PAJA for the year ending June 30, 1986, was completed at or about the same time as the: (1) Stockholder Resolution declaring the shareholders' intention to liquidate PAJA under section 333, (2) Form 966, Corporate Dissolution or Liquidation, and (3) Form 964, Election of Shareholders Under Section 333 Liquidation, for each PAJA shareholder. The corporate Federal income tax return of PAJA for the short period ending December 28, 1986, was in Johnson's possession at the time of the election and reflected earnings and profits of $ 96,311.33. Such uncontradicted *708 evidence makes it difficult to believe that Johnson was ignorant of those earnings at the time the election papers were filed. We conclude that, at or prior to the time of the shareholders resolution to liquidate and the filing of Forms 964 and 966, petitioners knew or should have known of PAJA's $ 96,311.33 in earnings and profits at the time of liquidation. Under these circumstances, it cannot be said that petitioners, who have the burden of proof, Rule 142(a), have demonstrated that their election was made "without full knowledge of the facts" so as to enable them to obtain the benefits of Meyer's Estate v. Commissioner. See 200 F.2d at 595. Such being the case, petitioners' mistake rests upon an erroneous conception of the application of section 333, i.e., a mistake of law. Petitioners next point to the inaccurate reporting of the ownership of PAJA shares. PAJA's three shareholders, Johnson, Lyon, and the PAJA Trust in fact owned 51, 49, and 8 shares, respectively, in December 1986. The Forms 964 filed with the IRS, however, indicated shareholder ownership of 47, 46, and 7 shares, respectively. Petitioners contend that this was a mistake of fact entitling *709 them to revoke the election. We disagree. The fact of the matter is that all shareholders of PAJA made the election. That there were inaccuracies as to the number of shares owned by each electing shareholder is irrelevant. In any event, it does not constitute a mistake of fact sufficient to relieve petitioners of the consequences of their election. Another theory on which petitioners seek to revoke the election focuses on the instructions accompanying Form 966, which provide in part as follows: If the resolution or plan is amended or supplemented after Form 966 is filed, file an additional Form 966 within 30 days after the amendment or supplement is adopted. The additional form will be sufficient if you show the date the earlier form was filed and attach a certified copy of the amendment or supplement and all other information required by Form 966 and not given in the earlier form.
Petitioners contend that, by permitting amendment or supplementation of the plan of liquidation, the instructions allow a taxpayer to liquidate the corporation under an entirely different section. Petitioners misconstrue the instructions' purpose. The instructions simply provide that *710 in the event the plan of liquidation is amended or supplemented, an amended Form 966 should be filed disclosing any such modifications to the plan. They do not permit revocation of the election under one section in favor of an election under another. Finally, petitioners ask us to consider notions of fairness and equity. Although fairness and equity are indeed important considerations in appropriate circumstances, they have no bearing upon the validity or revocability of petitioners' election. The most that can be said is that petitioner simply made an unfortunate mistake, blame for which lies with them and cannot be excused based on notions of fairness and equity. Moreover, as we have stated previously, in respect of another type of election, "Even if we were inclined to determine that petitioner was entitled to such equitable relief, we would be powerless to grant it, for as we have previously stated, this Court does not have equity jurisdiction." Atlantic Veneer Corp. v. Commissioner, 85 T.C. 1075, 1084 (1985), affd. 812 F.2d 158 (4th Cir. 1987). PAJA Shareholder's Election Under Section 333 is Invalid
Petitioners ask us to consider *711 various circumstances surrounding the election which they contend are fatal to its validity: (1) All shares of PAJA were not subject to the election; (2) Supplemental reporting requirements of section 333 were not complied with; (3) 80 percent of the shareholders did not elect under section 333; (4) PAJA was not dissolved under State law; (5) Liquidation of PAJA did not occur within one calendar month; (6) Clients of PAJA were not informed of its liquidation; (7) Bylaws of PAJA prohibited the payment of dividends; and (8) Forms 966 and 964 were not filed within the 30-day period following adoption of the plan of liquidation. The reasons presented in (1) and (2) are merely procedural errors and do not affect the election's validity. Petitioners' inaccurate reporting of shares owned by the electing shareholders was corrected and, in any event, is not material. The fact that only 100 shares instead of 108 shares were specified in the Forms 964 is irrelevant in view of the fact that all the shareholders executed the form. See supra page 13. Moreover, 100 shares is more than 80 percent of the 108, so that, in any event, the percentage of ownership requirement of section *712 333 was met. Given the fact that Forms 964 were previously filed, failure thereafter to file copies with petitioners' personal return likewise has no material effect upon the election's validity. Evidence of an "affirmative intent" on the part of the taxpayer to make the election is controlling. Atlantic Veneer Corp. v. Commissioner, 85 T.C. at 1082-1083. This Court has repeatedly emphasized that procedural errors do not affect the validity of an election under the tax laws where the taxpayer substantially complied with the reporting requirements. American Air Filter Co. v. Commissioner, 81 T.C. 709, 719 (1983) and cases cited thereat. That it is petitioners, rather than respondent, who seek to avoid the election does not prevent the application of this principle; if anything, the "substantial compliance" doctrine is more applicable under such circumstances. The shareholders' resolution to liquidate under section 333, the filing of Forms 964 and 966, and the checks written to make the cash distributions all indicate a clear intention to liquidate PAJA. Petitioners substantially complied with the provisions of section 333 and are bound *713 by the election. Petitioners also argue that the 80-percent requirement of section 333(c)(1) was not satisfied because Lyon, owning 49 of 108 shares, agreed to the election based on an incomplete knowledge of the relevant facts. They contend that, as a result of erroneous advice from Johnson, Lyon based her decision to liquidate PAJA under section 333 upon a mistake of fact. Although Lyon was a shareholder of PAJA, she relied totally upon Johnson to manage the affairs of the corporation, including her ownership interest therein. Johnson acted on her behalf throughout the liquidation process, making the election, completing the necessary forms, and distributing the corporate assets. The degree of control which Johnson exercised over Lyon's shares and PAJA leads us to conclude that her shares, ignoring technical legal ownership, should be treated as his shares insofar as the election under section 333 is concerned. Petitioners, who have the burden of proof, Rule 142(a), have not persuaded us that Lyon's single statement that she considered her husband an expert because he was a certified public accountant entitles her to be accorded the same status as that of the taxpayers in *714 Meyer's Estate v. Commissioner, supra, who relied on the advice of an independent accountant. We are satisfied that Lyon's shares were properly included in the computation of electing shareholders, thus satisfying the 80-percent requirement of section 333(c)(1). Petitioners further argue that the election is invalid due to PAJA's failure properly to liquidate under State law, because there were no meetings of the board of directors or stockholders, the articles of dissolution were not filed with the Maryland authorities, and creditors were not notified during the period specified in section 333. These arguments are totally without merit. State law is simply not controlling in respect of the issue of what constitutes a liquidation for Federal tax purposes. Frelmort Realty Corp. v. Commissioner, 29 B.T.A. 181, 187-189 (1933) (citing Burnet v. Harmel, 287 U.S. 103, 77 L. Ed. 199, 53 S. Ct. 74 (1932), and Guild v. Commissioner, 19 B.T.A. 1186 (1930)). The regulations under section 333 reflect this view. See sec. 1.333-1(b)(2), Income Tax Regs., which provides: (2) If a transaction constitutes a distribution in complete liquidation within *715 the meaning of the Code and satisfies the requirements of section 333, it is immaterial that it is otherwise described under the local law. [Emphasis added.]
Whether there was a liquidation is a question of fact, and we are satisfied that the actions taken herein provide sufficient substance to satisfy us that PAJA was in fact liquidated. See Shull v. Commissioner, 291 F.2d 680, 684 (4th Cir. 1961), revg. on other grounds 34 T.C. 533 (1960); Kennemer v. Commissioner, 96 F.2d 177, 178 (5th Cir. 1938), affg. 35 B.T.A. 415 (1937); Alameda Realty Corp. v. Commissioner, 42 T.C. 273, 281 (1964). Petitioners' assertion that the section 333 election is invalid because PAJA's clients were not informed of the liquidation is equally without merit as is their claim that a provision in PAJA's bylaws prohibiting the payment of dividends renders the section 333 election invalid. Petitioners further argue that the requirements of section 333 that all assets be distributed in one calendar month was not met because some assets were distributed after December 31, 1986. Petitioners point to payments *716 set forth in our findings of fact, reflected in checks payable to PAJA. See supra pages 4-5. Three of those checks were dated in 1986, and petitioners have failed to offer any evidence that they were not in Johnson's possession before December 31 of that year. We therefore conclude that these checks were the equivalent of cash distributed in liquidation of PAJA within the month of December 1986; the fact that they were not deposited in petitioners' personal bank account until January 1987 is irrelevant. An indeterminate amount of the check dated, received, and deposited in petitioners' personal bank account in March 1987 apparently represented payment for PAJA's services in November and December 1986. In any event, we are satisfied that any such de minimis payment and its distribution were part of the winding up process and that, to the extent that it represented an amount due PAJA, it was simply payment on an account receivable which was constructively distributed to PAJA's shareholders in December 1986. As far as the U.S. Treasury tax refund check is concerned, we think that, even if we accept petitioners' contention that it was constructively received despite its return *717 to the IRS, this too was a de minimis amount representing payment of an account receivable constructively distributed to petitioners in December 1986. [8] Cf. Estate of Meyer v. Commissioner, 15 T.C. 850, 864 (1950), revd. on other grounds 200 F.2d 592 (5th Cir. 1952). Petitioners' reliance on Siegel v. United States, 464 F.2d 891 (9th Cir. 1972), and Osenbach v. Commissioner, 17 T.C. 797 (1951), affd. 198 F.2d 235 (4th Cir. 1952), is misplaced. Siegel involved the application of the assignment of income doctrine in order to determine whether a corporation or its shareholders should *718 be taxed on the item involved and, in no way, involved the timing of a distribution in liquidation. Osenbach involved whether amounts received by shareholders subsequent to the liquidation of the corporation should be treated as ordinary income or capital gain; it similarly did not involve the timing of a distribution in liquidation. Petitioners' final argument for invalidating the election focuses on what they contend is an untimely filing of Forms 964 and 966. They assert that the decision to liquidate PAJA was made in November of 1986, that the filings of Forms 964 and 966 were not made within 30 days, and were therefore untimely with the result that the election was invalid. However, the evidence clearly establishes December 28, 1986, as the date of adoption of the plan of liquidation. Therefore, the filings were timely and the election valid. Reincorporation of PAJA
If it is determined the election was valid, petitioners present an alternative argument, namely that the election was rendered void when PAJA reincorporated in 1991. Here again, the authorities which petitioners cite in support of their position miss their mark. Telephone Answering Service Co. v. Commissioner, 63 T.C. 423 (1974), *719 affd. without published opinion 546 F.2d 423 (4th Cir. 1976), Rev. Rul. 60-50, 1960-1 C.B. 150, and Rev. Rul. 76-429, 1976-2 C.B. 97, all involved the validity of a liquidation which was accompanied by an almost simultaneous reincorporation. This is a far cry from the situation herein where over 4 years elapsed between the liquidation and reincorporation. Cf. Pridemark, Inc. v. Commissioner, 345 F.2d 35 (4th Cir. 1965); Kennemer v. Commissioner, 96 F.2d at 178-179. Petitioners' contention is without merit. Additions To Tax
For purposes of section 6653(a), negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances; petitioners have the burden of proof. Birth v. Commissioner, 92 T.C. 769, 770 (1989). They have failed to carry their burden. Indeed, our conclusion that Johnson, and therefore petitioners, knew or should have known that PAJA had earnings and profits points to the conclusion that they should have realized that the amounts they received were required, to that extent, *720 to be reported as dividend income under section 333. Their failure to do so is compounded by the fact that Johnson was a certified public accountant. Moreover, their negligence is further reflected in their failure to disclose, on their 1986 return, that the amounts reported as the proceeds from a "sale" of PAJA stock were distributions in liquidation as required by section 1.333-6, Income Tax Regs. Under such circumstances, we hold that respondent's determinations of additions to tax under section 6653(a)(1)(A) and (B) are sustained. [9]
Section 6661(a) imposes an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. In determining if there is a substantial understatement of income, the amount of the understatement is reduced by the portion of the understatement which is attributable to: (1) The tax treatment of any item if there is or was substantial authority for such *721 treatment, or (2) any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return. Sec. 6661(b)(2)(B). In light of our discussion, see supra pages 10-13, it is clear that the opinion of the Court of Appeals for the Fifth Circuit in Meyer's Estate v. Commissioner, supra, falls far short of satisfying the substantial authority requirement. Likewise, the mere labeling in petitioners' 1986 return of the amounts received in liquidation as having been received from the "sale of PAJA stock" is woefully inadequate to satisfy the disclosure requirement. We hold that respondent's determination as to the additions to tax under section 6661 is sustained. Offsets
Petitioners seek to offset any liability which may be imposed upon them by this Court by a 1991 payment of $ 23,000 and by claimed increased withholdings in 1987, 1988, and 1989. As to the $ 23,000, respondent has indicated that it will be taken into account in assessing any deficiency based upon our decision herein. As to the claimed withholdings in subsequent years, those years are not before the Court, and we *722 have no jurisdiction in respect thereto. Beyond this, it appears that the bulk of those withholdings were used to pay petitioners' reported tax liabilities for those later years. Moreover, to the extent that the withholdings resulted in a claim by petitioners that they were entitled to refunds, there is no evidence that such refunds were not in fact made. * * * The record herein reflects a sad scenario of error by petitioners based upon a fundamental mistake by Johnson as to the impact of an election under section 333 and his desperate efforts to nullify or avoid the effects of that election, efforts which served only to confuse rather than clarify the situation. While we do not share respondent's sinister interpretation of those efforts, it is clear to us that, under the circumstances herein, petitioners cannot escape the consequences of the established principle that: Oversight, poor judgment, ignorance of the law, misunderstanding of the law, unawareness of the tax consequences of making an election, miscalculation, and unexpected subsequent events have all been held insufficient to mitigate the binding effect of elections made under a variety of provisions of the Code. *723 * * * [Estate of Stamos v. Commissioner, 55 T.C. 468, 474 (1970).]
In order to enable certain technical adjustments to be made in the computations, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code as amended and in effect for 1986, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on the deficiency. ↩
2. We note that while the Form 1120-A for the period ending June 30, 1986, contained a Dec. 28, 1986, date of signature, the Form 1120 for the period ending Dec. 28, 1986, contained no date of signature.↩
3. The regulation provides that the election "cannot be withdrawn or revoked," with exceptions not relevant herein. A predecessor regulation under sec. 112(b)(7) of the Internal Revenue Code of 1939, containing substantially the same language, see Regs. 111, sec. 29.402-1, was held valid in Estate ofMeyer v. Commissioner, 15 T.C. 850, 865-867 (1950), affd. on this issue 200 F.2d 592, 596↩ (5th Cir. 1952).
4. See S. Rept. 627, 78th Cong., 1st Sess. 48-49 (1943), 1944 C.B. 973. The provisions and objectives of section 112(b)(7) were carried over to the 1954 Code through the enactment of section 333. See S. Rept. 1622, 83d Cong., 2d Sess. 48, 256 (1954). Section 333↩ was subsequently repealed by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 631(e)(3), 100 Stat. 2085, 2273, effective for liquidations occurring after Dec. 31, 1986.
5. SEC. 333. ELECTION AS TO RECOGNITION OF GAIN IN CERTAIN LIQUIDATIONS. (a) General Rule. -- In the case of property distributed in complete liquidation of a domestic corporation (other than a collapsible corporation to which section 341(a) applies), if -- (1) the liquidation is made in pursuance of a plan of liquidation adopted, and (2) the distribution is in complete cancellation or redemption of all the stock, and the transfer of all the property under the liquidation occurs within one calendar month,
then in the case of each qualified electing shareholder (as defined in subsection (c)) gain on the shares owned by him at the time of the adoption of the plan of liquidation shall be recognized only to the extent provided in subsections (e) and (f).
* * * (c) Qualified Electing Shareholders. -- For purposes of this section, the term "qualified electing shareholder" means a shareholder (other than an excluded corporation) of any class of stock (whether or not entitled to vote on the adoption of the plan of liquidation) who is a shareholder at the time of the adoption of such plan, and whose written election to have the benefits of subsection (a) has been made and filed in accordance with subsection (d), but -- (1) in the case of a shareholder other than a corporation, only if written elections have been so filed by shareholders (other than corporations) who at the time of the adoption of the plan of liquidation are owners of stock possessing at least 80 percent of the total combined voting power (exclusive of voting power possessed by stock owned by corporations) of all classes of stock entitled to vote on the adoption of such plan of liquidation, * * *
* * * (d) Making and Filing of Elections. -- The written elections referred to in subsection (c) must be made and filed in such manner as to be not in contravention of regulations prescribed by the Secretary. The filing must be within 30 days after the date of the adoption of the plan of liquidation. (e) Noncorporate Shareholders. -- In the case of a qualified electing shareholder other than a corporation -- (1) there shall be recognized, and treated as a dividend, so much of the gain as is not in excess of his ratable share of the earnings and profits of the corporation accumulated after February 28, 1913, such earnings and profits to be determined as of the close of the month in which the transfer in liquidation occurred under section (a)(2), but without diminution by reason of distributions made during such month; but by including in the computation thereof all amounts accrued up to the date on which the transfer of all property under the liquidation is completed; * * *↩
6. See also Goldman v. Commissioner, a Memorandum Opinion of this Court dated Oct. 25, 1950. To the same effect, see Raymond v. United States, 269 F.2d 181 (6th Cir. 1959); Cockrell v. United States, 58-1 U.S. Tax Cas. (CCH) P9159↩, 1 A.F.T.R.2d (RIA) 394 (N.D. Tex. 1957).
7. We have applied the rule of Golsen v. Commissioner, 54 T.C. 742 (1970), and followed the reversal of our decision in Estate of Meyer v. Commissioner, 15 T.C. 850 (1950), leaving open the question whether we would otherwise follow that reversal. See DiAndrea, Inc. v. Commissioner, T.C. Memo 1983-768↩ notes 17 and 18.
8. Respondent has not asserted any increased deficiency based upon the inclusion of these items and/or the 1986 checks in petitioners' 1986 income as amounts received in the liquidation of PAJA. Nor has respondent disputed petitioners' assertion that both categories of items were reported by petitioners as ordinary income in their 1987 return.↩
9. Cf. Langer v. Commissioner, T.C. Memo 1990-268↩.